IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
SOUTHERN DISTRICT DIVISION

| | | |
|---|---|---|
| MARTIN ARMSTRONG,<br>Plaintiff, | § § § | |
| vs. | § § § § § | CIVIL ACTION NO.<br><br>_____<br><br>Jury Demanded |
| MARATHON<br>PETROLEUM COMPANY LP,<br>Defendant. | § § § § | |

**PLAINTIFF, MARTIN ARMSTRONG'S, ORIGINAL COMPLAINT**
**AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Martin Armstrong, hereinafter called Plaintiff, complaining of and about Marathon Petroleum Company LP, hereinafter called Defendant, and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1.      Plaintiff Martin Armstrong, is a citizen of the United States and the State of Texas and resides in Galveston County, Texas.

2.      Defendant, Marathon Petroleum Company LP, is, on information and belief, an Ohio company with its headquarters at 539 South Main Street, Findlay, Ohio 45840-3295. On information and belief, Marathon Petroleum Company LP conducts substantial business in Texas including through its ownership of the Galveston Bay Refinery in Texas City. Marathon Petroleum Company LP can be served through its counsel, Shipley Snell Montgomery LLP, 712 Main street Suite 1400, Houston, TX 77002.

## JURISDICTION

3.   The action arises under 28 U.S.C. section 1331, (federal question), 28 U.S.C. section 1343 (civil rights), and 42 U.S.C. section 2000(e) as hereinafter more fully appears.

4.   This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

5.   This is an action under Title 42 U.S.C. Section 2000e et. seq. and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and color.

6. This is an action under Title 42 U.S.C. Section 12101 et. seq. to correct unlawful employment practices on the basis of disability.

## CONDITIONS PRECEDENT

6.   All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

7.   On or about, March of 2013, Plaintiff was hired by Defendant via the acquisition of a refinery plant located in Texas City, Texas, formerly owned by British Petroleum ("BP"). Plaintiff had formerly worked for BP, from 2004-2013. Plaintiff had a stellar tenure at BP, substantiated by his promotions and job evaluations. Plaintiff was working at the BP facility

(currently Marathon) during an explosion that occurred in 2008, killing fellow employees. Due to this incident Plaintiff suffered from Post Traumatic Stress Syndrome ("PTSD"). Defendant was aware of his condition at all times of employment. That withstanding, BP has no further relevance to this lawsuit.

8. In May of 2013, though Mr. Armstrong permanent place of business was at the Marathon, Texas City location, he would regularly travel and work at Marathon's Headquarters in Findlay, Ohio. As, one of the Defendant's proffered reasons to some of their adverse employment actions is due to Mr. Armstrong's alleged tardiness in arriving to Findlay on Monday mornings; that in fact is not true as Mr. Armstrong was not supposed to report to the office until 1:00p.m.; which he regularly did.

9. Mr. Armstrong during his tenure with Defendant was subject to severe scrutiny and a standard not required nor adhered to by those outside of his racial group; or in the alternative was treated differently than those similarly situated within his race.

10. He was routinely, monitored and disciplined for inaccurate complaints about his whereabouts and his quality of work.

11. For instance, Mr. Armstrong was constantly micromanaged. On a normal day, Mr. Armstrong would take a lunch between 1:00p.m. and 2:00p.m, however, when he took his lunch, he would rarely leave the site. He would usually order hi lunch between 1p.m. and 2p.m. and would meet the delivery person at the gate – clocking out for less than 5 minutes. Mr. Armstrong would then immediately return to his desk and eat his lunch. Mr. Armstrong's supervisor pulled him aside one day and told him that he needed to let him know when he left campus, including lunch. Mr. Armstrong asked why he had such a mandate imposed, when his Caucasian counterparts did not have to do so. Mr. Kindervater would not give him an

3

explanation as to why. Moreover, his counterparts outside of his race, went to lunch for over an hour, but were never reprimanded nor required to let their immediate supervisor know where they were at all times.

12. This is one of many instances in which Mr. Armstrong was treated differently than his Caucasian colleagues.

13. At the inception of his employment with Defendant, Mr. Armstrong was required to work a "9/80" schedule, working 9 days on a bi-weekly rotation for 40 hours per week.

14. On or about, December 5, 2013, Mr. Armstrong met with his supervisors Darryl O'Bryant, Fred Kindervater, and Randy Schutz and they informed Mr. Armstrong that he needed to be at work 7 days a week, working 14-16 hour shifts.

15. At that time, Mr. Armstrong informed his immediate supervisor that due to his disability ("PTSD"), he could not work that shift. When he informed them of his schedule restrictions, his supervisor asked him why he could not work the requested schedule. During that conversation, Mr. Armstrong informed his supervisors that he had a disability (that was on record with Marathon) and that he and his supervisors should speak with Human Resources about accommodations that could be had.

16. On or about December 12, 2013, Mr. Armstrong met with Angela Chen ("Ms. Chen") to discuss his work restrictions due to his disability and reasonable accommodations. Mr. Armstrong requested to continue working his "9/80" schedule because of his severe fatigue - a side effect of his PTSD. In response to this requested accommodation, Ms. Chen told Mr. Armstrong, "Everyone in the Maintenance Department has to work these hours and you have to as well."

17. In response to that conversation, in retaliation, Mr. Armstrong's supervisors

4

switched him from the "9/80" schedule to 7 days a week at 12 hours a day on the nights shift; extending his hours and ignoring his accommodation request. Due to his PTSD, Mr. Armstrong struggled with this schedule as well. Subsequently, his supervisors switched him to 4 days a week for 15 hours a day.

18. In March of 2014, Mr. Armstrong was placed on a Performance Improvement Program ("PIP"). During that time Mr. Armstrong tried to adhere to the PIP, but nothing was deemed satisfactory to his employer even though he continued to perform his tasks at level akin to those that had allowed him to obtain stellar remarks and ascend to the position he currently occupied.

19. At the end of his PIP Mr. Armstrong requested disability leave due to side effects from his PTSD and Defendant's failure to accommodate him.

20. Finally, upon returning from leave on May 2, 2013, for which he was give release by his doctors; he was terminated.

## RACE AND COLOR DISCRIMINATION

21. Paragraphs 1-20 are restated herein and incorporated by reference.

22. Defendant, Marathon Petroleum Company LP, intentionally engaged in unlawful employment practices involving Plaintiff because of his race and color.

23. Defendant, Marathon Petroleum Company LP, also violated Plaintiff's rights under 42 U.S.C. Section 1981.

24. Defendant, Marathon Petroleum Company LP, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any

employment opportunity or adversely affect his status because of Plaintiff's race and color in violation of 42 U.S.C. Section 2000e-(2)(a) and 42 U.S.C. Section 1981.

25.     Defendant, Marathon Petroleum Company LP, classified Plaintiff in a manner that deprived him of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e-(2)(a) and 42 U.S.C. Section 1981.

26.     Plaintiff alleges that Defendant, Marathon Petroleum Company LP, discriminated against Plaintiff on the basis of race and color with malice or with reckless indifference to the state-protected rights.

### AMERICANS WITH DISABILITY ACT

27.     Paragraphs 1-20 are restated herein and incorporated by reference.

28.     Defendant, Marathon Petroleum Company LP, intentionally engaged in unlawful employment practices involving Plaintiff because of his disability.

29.     Defendant, Marathon Petroleum Company LP, intentionally discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment in violation of 42 U.S.C. Section 12112. The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee.

30.     At all material times, Plaintiff was able to perform the essential functions of his position with accommodation.  Plaintiff has a disability, has a record of a disability and is regarded as having a disability that substantially limits at least one major life activity.  Plaintiff was discriminated against on the basis of his disability, record of a disability and perception of having a disability.

31.     Plaintiff alleges that Defendant, Marathon Petroleum Company LP, discriminated

against Plaintiff on the basis of disability with malice or with reckless indifference to the disability in failing to reasonably accommodate him according to his disability.

## RETALIATION BY MARATHON PETROLEUM COMPANY LP

32. Paragraphs 1-20 are restated herein and incorporated by reference.

33. Plaintiff alleges that Defendant Marathon Petroleum Company LP instituted a campaign of retaliation that included moving him to a more arduous schedule. Mr. Armstrong informed Ms. Chen, in Human Resources, of his disability, who claimed, she didn't want to hear it and still had him work a schedule not conducive to his disability. This retaliation was and is due to Plaintiff exercising his rights. Plaintiff suffered damages for which Plaintiff herein sues.

34. Furthermore upon the same date of his return from disability leave on May 2, 2016, he was terminated even though he was released by his doctors as able to work.

## DAMAGES

35. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a. Declaratory judgment stating that the Defendant has engaged in discriminatory and retaliatory conduct and that the Defendant has violated Plaintiff's civil rights;

    b. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    c. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    d. All reasonable and necessary costs incurred in pursuit of this suit;

  e. Expert fees as the Court deems appropriate;

  f. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

  g. Inconvenience;

  h. Prejudgment interest;

  i. Loss of earning capacity which will, in all probability, be incurred in the future; and

  j. Loss of benefits.

## EXEMPLARY DAMAGES

36. Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## SPECIFIC RELIEF

37. Plaintiff seeks the following specific relief, which arises out of the actions, and/or omissions of Defendant described hereinabove:

  a. Prohibit by injunction the Defendant from engaging in unlawful employment practices; and

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Martin Armstrong, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount

within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By: _____/s/ Gene A. Watkins_____
Gene A. Watkins
Attorney-in-Charge
Texas Bar No. 24058954
Southern District Bar No: 1129993
E-Mail: gwatkins@shermanwatkins.com
1418 Washington Avenue
HOUSTON, TX 77002
Tel. (713) 224-5113
Fax. (866) 560-8676
Attorney for Plaintiff
Martin Armstrong

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**